## IN THE INTEREST OF: B.B.; H.B.; A.W.; and J.W.

### Case No. CJ87-1727DPAES

Sixth Judicial Circuit, Pasco County
December 2, 1987

8

**APPEARANCES OF COUNSEL**

**Randall Grantham** for grandparents.
**David Murphy** for mother.
**Victoria E. MacIntosh,** guardian ad litem.

## OPINION OF THE COURT

WAYNE L. COBB, Circuit Judge.

This is a consolidated action involving prayers for this Court to determine the dependency of four children; several demands for their custody or visitation; and a demand by their mother for child support from the father of three of the children if she gets custody. The children are currently living with their mother. However, in the past year or so all have been in shelter for a time; two of them have been in the custody of their father for times; the same two have been in the custody of their paternal grandparents for times; and all have been back with their mother for times. In other words, over the past year or so they have been bounced from pillar to post, separated from each other and reunited several times. The reports to this Court indicate that they seem fairly content being with their mother, and their paternal grandparents, but not in shelter, nor with their father. The children are aged approximately 6 years, 4 years, 2 years and 18 months. The two year old is a boy and the other three are girls. The youngest three are illegitimate. The father of the oldest child is gone, and pays no child support and is not involved herein.

The father of the youngest three children appears to be psychotic. He claims that his mental state results from a head injury received several years ago. Everyone involved in this action, including his parents and his lawyer, agree that he is unfit to have custody of the children. He apparently sleeps wherever he becomes tired, and is not even responsible enough to report for examinations in Tampa to continue receiving workmen's compensation for his head injury.

The grandparents seem to be solid, responsible citizens. Their only weakness as potential custodians seems to be that they allow their son to come and go in and out of their home as he pleases. An issue which was raised during the various hearings related to the fact that they are nudists. But this Court knows of no harmful effects of responsible nudism on either adults or children, nor was any such evidence presented at this trial. They have raised two sons, one of which is now irresponsible, and the other committed suicide a few years ago. They have also raised a daughter who seems normal and responsible.

The mother of these children is borderline retarded, uneducated and ignorant of any of the social graces. She was raised by, and continues

9

to live with a family that would make Erskine Caldwell blush. She was sexually molested by a former brother-in-law regularly as a youngster. One current sister-in-law is alleged to be a practicing bisexual. Her mother and one brother are alleged to enjoy sexual molestation of children, including these children. Most of the family appears to huddle together in shacks with broken windows and doors, supporting themselves primarily with public welfare and the benevolence of the local Roman Catholic Church.

This Court has received much assistance and various recommendations in deciding these issues. Health and Rehabilitative Services recommends the children all remain with their mother. The Guardian Ad Litem recommends the two middle children live with the paternal grandparents. A physician member of the SAVE Team testified that both younger girls were victims of sexual molestations. A physician member of the Child Protection Team testified that the youngest girl had been the victim of anal molestation but found no evidence that she had been molested vaginally nor any evidence that the four year old girl had been sexually molested at all. One psychologist testified that the paternal grandparents are the only stable people in the whole bunch and are best suited for custody. Another psychologist testified that there was nothing to suggest that the children's'mother was an unfit mother or posed any danger to the children, and with counseling he believed the mother to be a fit parent. A Roman Catholic Nun who regularly visits the children's'mother and her family, and has considerable experience and training in family counseling and spiritual direction testified that the children's'mother and her family are "poor" but "amazingly clean" and that the mother is a fit parent.

In reaching decisions on the issues presented in this action, this Court is to be guided by the evidence presented and is bound by the law. The law governing the issues in this action is such that it imposed great restrictions on this Court's discretion, but provides little guidance.

In 1957, the Florida Supreme Court said "that in a habeas corpus proceeding involving the custody of a child 'the law is not so much concerned about the illegality of the detention as the welfare of the child. . . .' (Arnd't v. Prose, 94 So.2d 818 (Fla. 1957)) But since 1957, the courts of this nation have abdicated much of their social responsibility in favor of emphasizing individual rights. Consequently in 1984, the Florida Supreme Court stated: "When the custody dispute is between a natural parent and a third party, . . . the test must include consideration of the right of a natural parent 'to enjoy the custody, fellowship and companionship of his offspring. . . . This is a rule older

than the common law itself.' " *In Re Guardianship of D.A. McW., v. Nero,* 460 So.2d 368 (Fla. 1984).

This change in emphasis is somewhat paradoxical because in the last thirty years our society has greatly increased the public support provided for dependent children such as these. It seems logical that as public support is increased, so would be societies' control over the children. But social evolution is not always logical.

The evidence presented in this action makes it clear that the best interests of these children and the best interests of society would be served by placing these children with their grandparents. The grandparents seem better able to imbue these children with middle class American values and mores, and would take the children off the public welfare rolls.

But the evidence presented also fails to establish by a preponderance of the evidence (if that is a standard? See *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed. 599, (1982)) that the mother does not have the fundamental qualities necessary to raise four children with public and religious support, and with continuing counseling and supervision of her parenting skills.

If their mother raises these children, it is probable that they will burden our criminal justice and welfare institutions, but will only minimally burden our educational institutions. However, the evidence indicates that with support she is able to keep the children reasonably well nourished and disease free. She seems to be reasonably able to keep the children from being run over by motor vehicles. And with continuing supervision and support, she may also be able to provide them some protection from future sexual abuse. Therefore, the children do not appear to be dependent as defined by § 39.01, Florida Statutes. *State v. M.T.S.,* 408 So.2d 662 (Fla. 3d DCA 1982), *In Int. of J.H., R.H. & J.S. v. State,* 480 So.2d 680 (Fla. 1st DCA 1985). *In re: Int. of C.W. v. Dept. of H.R.S.,* 490 So.2d 175 (Fla. 1st DCA 1986). *In the Int. of G.D.H. & A.J.S.,* 498 So.2d 676 (Fla. 1st DCA 1986). *In the Int. of C.S.,* 503 So.2d 417 (Fla. 1st DCA 1987).

It is therefore,

ADJUDGED that the four children involved in this action remain with their mother under the continuing supervision of HRS.

It would also seem socially responsible for this Court to ensure that this mother had no more children in the future to further diminish her already weak ability to care for these existing four children. History indicates that five years hence this mother will have had three more

**11**

children. But the appellate courts have said that this Court may not impose any such limitations on the rights of litigants. *Rodriguez v. State,* 378 So.2d 7 (Fla. 2d DCA 1979); *Burchell v. State,* 419 So.2d 358 (Fla. 2d DCA 1982).

Therefore, this Court is constrained by law to wait until this mother has more children for society to support (which she surely will) to determine if some of the children must be taken from her to reduce her parenting burden to manageable levels.

It is further ADJUDGED that the paternal grandparents have the right to visit the three youngest children of these children every other weekend from 6:00 p.m. on Friday until 6:00 p.m. on Sunday.

The natural father may not visit these children except under the supervision of the paternal grandparents, his parents.

It is further ADJUDGED that the natural father of the three youngest children pay to the mother of these children support in the amount of $20.00 each week for each child with the first payment due on December 18, 1987.

DONE AND ORDERED this 2nd day of December, 1987, in Chambers, Dade City, Pasco County, Florida.